## SUPREME COURT.

### In the Matter of Regulating and Grading Eightieth street, between Fifth avenue and the East river

Where a motion is made under the act of 1858 to vacate an assessment for regulating and grading a street in the city of New York, on the ground of *collusion and fraud* between the street commissioner and the contractor, in awarding the contract to the seeming lowest bidder, when he was in fact nearly

the highest bidder: The question is not whether the court are inclined to believe or suspect, or whether it is probable a fraud has been committed or may have been committed, but are the parties *proved guilty by the evidence?*

Where the street commissioner is not shown to have had any concert with the contractor, nor is the contract shown to have been procured by fraud, the assessment under the contract cannot be disturbed on that ground.

The *power of the legislature* to pass an act (as they did in this case in 1861,) confirming such contract, and authorizing the assessment, and requiring the city to pay the contractor the money due upon the contract may be authorized by some late decisions of the court of appeals, but it is *very doubtful legislation,* as it respects the proper application and effect of the laws of municipal corporations.

THE petition of Anthony S. Hope shows that an ordinance of the common council of the city of New York was passed in this matter June 14, 1856, by which "Eightieth street, between Fifth avenue and the East river be regulated and graded, under such directions as shall be given by the street commissioner, who may appoint an inspector thereon, and one of the city surveyors;" that for the more speedy execution of the ordinance the work be done at the expense of the common council, on account of the persons respectively upon whom the same might be assessed; that Charles McNeill, Jacob F. Oakley and William Dooley were appointed assessors to make a just and equitable assessment of the expense among the property owners to be benefited. That on or about the 26th of July, 1856, Joseph R. Taylor, who was then street commissioner, gave public notice, inviting estimates, bids, or proposals for the work to be done, stating that the same would be publicly opened on the 6th of August, 1856, at the office of the street commissioner.

That such notice was given under and in consequence of certain provisions of an act of the legislature of the state of New York, passed April 12, 1853, entitled " an act further to amend the charter of the city of New York," by which it was, among other things, provided as follows :

" § 10. No additional allowance beyond the legal claim, under any contract with the corporation, or for any service on its account, or in its employment, shall ever be allowed."

" § 12. All work to be done, and all supplies to be furnished for the corporation, involving an expenditure of

In the matter of Eightieth street.

more than two hundred and fifty dollars, shall be by contract, founded on sealed bids or on prososals, made in compliance with public notice for the full period of ten days, and all such contracts, when given, shall be given to the lowest bidder, with adequate security: all such bids or proposals shall be opened by the heads of departments advertising for them, in the presence of the comptroller and such of the parties making them as may desire to be present."

That, as a basis for bids or proposals for the said work, the said street commissioner, with the said notice, did cause to be stated an estimate of the probable amount of work necessary in the performance of the improvement so provided for, as follows:

"The following is an estimate of the probable amount of work to be done, viz : 20,000 cubic yards of rock to excavate and fill or remove ; 8,000 cubic yards of earth to excavate fill or remove ; 150 running feet of culverts ; excess of excavations over filling, 9,000 cubic yards."

That proposals were received by the said street commissioner for the said work, as follows :

|  | Earth Excavation, per cubic yard. | Rock do., per cubic yard. | Culverts, running feet. |
|---|---|---|---|
| Michael Waters, | $0 25 | $1 00 | $0 25 |
| C. C. Ellis, | 19 | 85 | 2 25 |
| John Gallagher, | 11 | 79 | 1 75 |
| Cornelius Smith, | 27 | 1 09 | 2 00 |
| Thomas Brady, | 10 | 91 | 2 00 |
| John Callahan, | 31 | 1 24 | 3 00 |
| John Kinsley, | 20 | 1 10 | 2 00 |
| John Pettigrew, | 15 | 79 | 1 00 |
| John Slattery, | 1 00 | 00 | 2 00 |
| Charles Devlin, | 26 | 89 | 90 |

The petition also states, that at the time the said proposals were so tendered, the said John Slattery was engaged in the performance of a certain other contract, made July 8, 1854, with the said corporation, for grading and regulating Seventy-ninth street (the street next below Eightieth street), from Fifth avenue to the East river, under direction of the

said street commissioner, that the character of the soil, surface, formation and material of the land of Seventy-ninth and Eightieth streets, between Fifth avenue and the East river, were very similar, and that the quantity of rock excavation necessary in so grading Eightieth street bore but a small proportion to the necessary earth excavation.

That the bid of said Slattery for said Seventy-ninth street contract stated as prices as follows: for earth excavation, per cubic yard, twenty cents, instead of one dollar, and for rock excavation, on the other hand, one dollar and fifty cents per cubic yard.

That proposals were handed in to the street commissioner for the work to be done on Eightieth street at the amounts of their respective bids on the estimated quantities—the aggregate bids of the respective parties were as follows:

1. John Slattery,.....................$8,300 00
2. John Gallagher,................... 16,942 00
3. John Pettigrew,................... 17,150 00
4. C. C. Ellis,..................... 18,857 00
5. Thomas Brady,................... 19,300 00
6. Charles Devlin,................... 20,015 00
7. Michael Waters,................... 22,037 50
8. John Kinsley,................... 23,900 00
9. Cornelius Smith,................... 24,260 00
10. John Callaghan................... 27,730 00

That said contract was, thereupon, by the street commissioner awarded to said Slattery, as being the lowest bidder. And on his report that Slattery was the lowest bidder, such contract was confirmed by the common council September 8, 1856.

The petition then goes on to state, that thereafter, to wit, on or about December 16, 1859, the said John Slattery procured to be made the certificate of one John T. Dodge, city surveyor, stating that under said contract he, said John Slattery, had performed work as follows:

Excavating  8,886 cubic yards of rock.
    "       33,633 cubic yards of earth.
        84 feet culvert,

making the sum claimed by the said John Slattery, to be due him for the said work, $33,801, or more than four times the amount of the proposal, upon which was awarded to him the said contract, and upon the said certificate, an assessment for the said $33,801, together with other charges, as follows:

| | | |
|---|---|---|
| Surveying | $808 | 79 |
| Inspecting | 310 | 00 |
| Advertising | 100 | 00 |
| Assessing | 733 | 39 |
| Collecting | 916 | 74 |

amounting in all, to $36,669 92 was made up, imposing upon the premises of your petitioner, the amount of nine hundred and fifty-two dollars, no notice being taken or allowance made in assessing said premises of the said former assessment for the same purpose.

That the said assessment, as so imposed, was duly confirmed on July 1, 1861; and that the same now appears as a charge and lien imposed upon premises of your petitioner, hereinafter particularly set forth, and a demand has been made upon him for the amounts so imposed upon his said premises.

That in the aforesaid proceedings relative to the said assessment, there was fraud in the aforesaid collusion and improper practice by which the said contract was obtained, and that as well the said contract was and is absolutely void and of no effect, for the reason that the same was not awarded to the lowest bidder with adequate security, thereby absolutely vitiating and making legally irregular and void the said assessment and all proceedings in respect thereto.

That the prices for the work so certified to have been done would have been on the bids of the following persons, as follows:

| | | |
|---|---|---|
| John Gallagher | $10,866 | 57 |
| Thomas Brady | 11,617 | 59 |
| John Pettigrew | 12,148 | 89 |
| C. C. Ellis | 14,132 | 37 |
| John Kinsley | 16,640 | 60 |

In the matter of Eightieth street.

| | |
|---|---|
| Charles Devlin | 16,728 72 |
| Michael Waters | 17,315 25 |
| Cornelius Smith | 18,934 65 |
| John Callaghan | 21,696 87 |
| John Slattery | 33,801 00 |

so that the said contract was, instead of being awarded to the lowest bidder, with adequate security, awarded to the highest of ten bidders.

And your petitioner further says, that the certificate furnished by the said Slattery of William Glieson, the inspector upon the said work, upon which to make the said assessment, states that the said work was finished on December 24, 1859, but that before December 7, 1857, the said the mayor, aldermen and commonalty, in a communication submitted to them by the then street commissioner, on the report of one Daniel Ewen, city surveyor, were notified of the aforesaid invalidity of said contract, and as appears by said report, said John Slattery had been theretofore notified that his said contract was not recognized as valid by the street department, and payment thereon was refused; and that the said the mayor, aldermen and commonalty, had been at various times, and before payments were made to said Slattery on account of said contract, notified of and well knew the matters aforesaid; and that your petitioner had well supposed and believed, that all proceedings in respect to said assessment and contract were at an end, and paid no further attention to the matter, and was in ignorance of any further proceedings in reference thereto, till bills for the amount, so claimed against him, were made out against him and said amount demanded from him.

Upon the petition and notice of motion, an order was made on the 8th of October, 1864, referring the matter to John V. W. Doty, Esq., as referee, to take the evidence and report the same to the court. On the 31st of March, 1865, the referee made his report to the court. The evidence consisted of all the records and papers in the street department, relating to this matter, being introduced and proved before the referee, by the employees and clerks of that department.

In the matter of Eightieth street.

The petitioner's counsel produces and offers in evidence the assessment list or roll in this matter, with the documents comprising the same, and reads therefrom the various indorsements and certificates on the back, the ordinance, the certificate of M. Lovell, deputy street commissioner, as to the work, &c., the general portions or passages of the assessment list, and the passages referring to the lots in question.

The petitioner's counsel also produces and offers in evidence the assessment list or roll, in the matter of regulating and grading Seventy-ninth street, from the Fifth avenue to the East river, with the documents comprising the same, and reads therefrom certificate of M. Lovell, deputy street commissioner, as to the work, &c., and from the list the concluding passages, stating the amount of work. Copies are hereunto annexed, marked "H," which may be read in the place of the originals.

Anthony S. Hope, being duly sworn, testifies: I am the petitioner; the lots described in the petition are possessed and owned by me; they were conveyed to me through the deeds which I produce. The deeds were then produced, proved and numbered. The evidence was then closed.

In April, 1861, an act of the legislature was passed in this matter, as follows:

"An act to confirm and legalize a certain contract made with John Slatery, for regulating and grading Eightieth street, in the city of New York.

"Passed April 15, 1861, three-fifths being present.

"*The people of the state of New York, represented in senate and assembly, do enact as follows:*

"§ 1. The contract made with John Slatery for regulating and grading Eightieth street, in the city of New York, from Fifth avenue to the East river, bearing date September fifteenth, eighteen hundred and fifty-six, is hereby confirmed and declared to be valid and in full force and effect.

"§ 2. The mayor, aldermen and commonalty of the city of New York, are hereby authorized to levy an assessment on the property benefited by said regulating and grading of

Eightieth street, from Fifth avenue to the East river, to the extent of reimbursing the said mayor, aldermen and commonalty, any amount of moneys paid under this act and the said contract with John Slatery.

"§ 3. The comptroller of the city of New York, is hereby authorized and required to ascertain the amount of money legally due, to said John Slatery, upon said contract, and to draw his warrant for the same."

MAN & PARSONS, *attorneys, and*
JOHN E. PARSONS, *counsel for petitioner.*

I. The contractor Slattery, and Joseph S. Taylor, the street commissioner, conspired, by the contract of Slattery with the corporation, and by the proposals on which it was based, to defraud.

1. Before the proposals were issued Slattery had contracted for and was engaged in regulating and grading Seventy-ninth street—also from Fifth avenue to the East river.

The probable proportionate amount of rock and earth excavation was the same for Eightieth street as for Seventy-ninth street. (*Vide Daniel Ewen's report of December* 7, 1857, *to the street commissioner; by him reported to the common council.*)

Slattery knew this, for he had done the work, and Taylor knew it necessarily from Slattery's returns to him. This proportion. is sufficiently proved by Mr. Ewen's language: "shows no rock, but is all earth."

The parties knowing this, the proposals for Eightieth street state the estimated quantities which are intended to guide contractors in making their bids at rock excavation, 20,000 yards; earth excavation, 8,000 yards. (*Vide the notice to contractors signed by Taylor, dated July* 26, 1856.)

Slattery, conforming his bid to the concerted arrangement, offers to do rock excavation for, per cubic yard, 00! earth excavation for, per cubic yard, $1.00!

It being worth about seventy cents a yard for rock, and

twenty cents for earth excavation (*Vide Mr. Ewen's same report*), and Slattery and the street commissioner knowing this, knew that on these estimated quantities every honest proposal would make an aggregate price much beyond Slattery's, though on the true quantities as they afterwards turned out, and at the time were known to Slattery and Taylor, vastly below his: while on the other hand, Slattery, by making his proposal at one dollar a yard for earth and nothing for rock excavation on the estimated quantities, would, though on the true quantities vastly the highest, seem to be the lowest bidder, and so give Taylor an opportunity to award him a contract, which would result as shown below in this case.

The true quantities proved to be just as it was known they must be: rock 8,886 yards instead of 20,000; earth 33,663 yards instead of 8,000. (*Vide Mr. Dodge's certificate with the assessment, dated December* 16, 1859.)

To remove all doubt of Slattery's complicity with Taylor, for Seventy-ninth street his bid and contract were : for rock excavation, per cubic yard, one dollar and fifty cents ; for earth excavation, per cubic yard, forty cents ; preserving a proper proportion, but in Mr. Ewen's language: " I have no hesitation in saying that these prices were double the value of the work," and indicating Slattery's fraud in Seventy-ninth street assessment for which the corporation refused to recognize his claim in that case (*vide Mr. Ewen's last communication*), and he was subsequently made to disgorge $17,036.91. (*Vide paper marked* 9, *and comptroller's letter of November* 28, 1862.)

2. It was therefore impossible that Slattery should honestly offer or Taylor honestly accept a proposal at one dollar for earth, and nothing for rock excavation.

When for the same character of work on the next street, Slattery was getting one dollar and fifty for rock and forty cents for earth.

II. While the charter for 1853 only permitted a contract with the lowest bidder, Slattery was not only not—

1. The lowest bidder; he was greatly the highest.

The work done was of (*vide Mr. Dodge's certificate before referred to*), rock excavation, 8,886 yards; earth excavation, 33,633 yards.

On these actual quantities, calculating the various bids, and it will appear that while Slattery's bid reaches the enormous figure of $33,801 00, the bids of the following were:

John Gallagher,.....................$10,866 57
Thomas Brady,..................... 11,617 59
John Pettigrew,.................... 12,148 89

As a contrast to this; on the fraudulent estimate, Slattery's bid was $8,300, instead of $33,801 00.

And the honest bids of the above parties, (of course much larger on the estimated than on the true items by reason of the 20,000 of pretended rock excavation):

John Gallagher,........................$16,942
Thomas Brady,......................... 19,300
John Pettigrew,....................... 17,150

2. Slattery and the street commissioner both well knew such would be the case: his bid and the proposals were framed to bring about just this result.

3. A fair price to Slattery for the work done, would be at the rates above stated from Mr. Ewen's report for 8,886 yards of rock, at seventy cents, $6,220.20; 33,633 yards of earth, at twenty cents, $6,726.60. Total, $12,946.80, instead of the $33,801 Slattery claims.

The effect of the diminished quantity of actual rock excavation, as contrasted with the estimated quantity, was to make the actual expense to Slattery about one-third what it would have been, had the actual excavation corresponded with the estimate. He has, therefore, done about one-third what he proposed, but he claims for it four times as much.

Slattery's bid on the proposed quantities, was $8,300, embracing 20,000 yards of rock excavation.

The rock excavation is reduced from 20,000 to 8,886 yards; less than half, and yet the price increases with greatly reduced work to $33,801, four times that proposed.

III. All the above facts and others, and the deductions we claim, and our charges of fraud are stated at length, and so also further established by the corporation itself.

And this too before Slattery was paid a cent, or had progressed considerably with his work.   And the corporation at the same time notified Slattery that his contract was void and illegal, and directed him not to proceed.   (*Vide the whole matter stated at length in the street commissioner's report of January*, 1859, *to the common council; returned with the other papers and printed with the proceedings of the common council.*)

This operated as ample notice to the corporation and dispensed with the propriety of further notice from the objectors who relied upon the corporation's own formal notice.

IV. It is further evident that Slattery knew of the invalidity of his contract from the fact that he applied to the legislature and procured the passage of an act by the aid of which he hoped to be more successful in his raid upon the city treasury (*Laws of* 1861, *p.* 569).

By the act, Slattery's contract by section one, "is hereby confirmed, and declared to be valid and in full force and effect."

By section two the corporation are authorized to levy an assessment "to the extent of reimbursing the mayor, aldermen and commonalty any amount of moneys paid under this act and (on) the said contract."

1. The passage of the act shows that the contract was recognized as invalid without legislative aid.

2. It surely can need no argument to demonstrate that the legislature had no power to impose upon the property holders a liability when none in fact existed.

V. But the assessment does not even follow the act, and this leads to a further objection to the assessment.

The "moneys paid" on contract consisted of the sum of $13,477.38x$2,296.77=$15,774.15.  The amount of the assessment is $36,699.92, of which $17,036.91 was an amount of which Slattery had defrauded the corporation on his

Seventy-ninth street contract. (*Vide statement of payment, and letter from the comptroller's office.*)

By the assessment, the corporation seeks to compel the innocent property holders who institute this proceeding to refund an amount of which this same Slattery had cheated it before his Eightieth street fraud; as Mr. Taylor must have well known, who yet gave the contract to Slattery, though in his proposal for bids he had published as a blind "no estimate will be received from any person who has previously violated any contract with this department."

VI. Before stating our propositions of law, it is well to consider the position of the city, with respect to assessments for improvements, of the character of that in this case.

1. The work is done at the expense of the property benefited, and by the act of April 9, 1813 (*Davies' Laws, p.* 527), the expense is to be collected from such property, and then applied to pay for the work. No provision was made for the city paying the contractor, and reimbursing itself from the collections on the assessment. (*Lake* agt. *The Trustees of Williamsburgh,* 4 *Den.,* 520; *McCullough* agt. *The Mayor of Brooklyn,* 23 *Wend.* 458). By subsequent provisions and acts, the corporation is permitted to anticipate to the contractor the collection from the assessment; becoming thereby substituted to the right of the contract, or if he have any, against the property benefited; but the right of the city is never an enlargement of the right of the contractor; is always limited to it. In this case the city occupies the position of Slattery, and with reference to any claim against the property holders, has no better or larger claim than had he. (*Davies' Laws, p.* 567 ; *Laws of* 1824, *p.* 39.) The petitioners therefore say :

*First.* The contract was in fraud of their rights. Property holders are mere passive victims of corporation frauds. The most they can do, though not so required, is to give notice of the fraud; in this case, the city was apprised of it in 1857. The fraud therefore vitiates the assessment.

*Second.* The contract, and all proceedings based upon it, were also void, under the charter of 1853, as having been

given to the highest instead of the lowest bidder. *(Brady* agt. *The Mayor,* 2 *Bosworth,* 173; *affirmed* 20 *New York,* 6 *Smith,* 312.) All the bids were in the prescribed form, with adequate security; corresponding, in every respect, to the requirements of the ordinance.

*Third.* To save the expense to themselves and the city of numerous suits or proceedings, in which the city would be unsuccessful, parties representing the larger part of the assessment unite in one proceeding applying for a *certiorari.*

· Different persons properly unite in the application. (*In the matter of the Third avenue assessment,* INGRAHAM, *J.*)

*Fourth.* *Certiorari* is the appropriate proceeding.

1. No relief can be granted under the act of April 17, 1858. (*Laws of* 1858, *p.* 574; *In the matter of Duane street,* INGRAHAM, *J.; In the matter of Second avenue,* SUTHERLAND, *J.; Miller's case,* 12 *Abbott,* 121; *Horn's case, Id.* 124.)

2. Nor under the act of May 7, 1841 (*Laws of* 1841, *p.* 143). The assessors have no power to consider the validity of an assessment. Their only jurisdiction is to make a just and equitable assessment of the aggregate amount assessed, " among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire." (*Davies' Laws, p.* 526; *Le Roy* agt. *The Mayor, &c. of New York,* 20 *Johns.* 430.)

3. Nor by action; the courts have uniformly refused relief by action, where the record shows the invalidity, on the very ground that the proper remedy was by *certiorari.* (*Heywood* agt. *City of Buffalo,* 14 *N. Y.* 4 *Kern.* 534; *Betts* agt. *City of Williamsburgh,* 15 *Barb.* 255; *Bouton* agt. *The city of Brooklyn,* 15 *Barb.* 375; *Van Doren* agt. *The Mayor of New York,* 9 *Paige,* 388; *Mayor, &c. of Brooklyn* agt. *Messerole,* 26 *Wend.* 132; *Mace* agt. *The Trustees of Newburgh,* 15 *How. Pr.* 161.)

*Fifth.* The confirmation of the assessment was a judicial act; in this case exercised without jurisdiction on the part of the city or its board of assessors.

The corporation has no power to impose upon property

owners a charge which could not be legally enforced by the party in whose favor it is imposed.

The complainants being numerous, the court will not compel them to individual actions for the recovery of amounts illegally exacted, but having by a single proceeding the matter and all the parties before it, will prevent by its action, a multiplicity of suits. (*Bouton* agt. *The city of Brooklyn*, 7 *How.* 198; *The People* agt. *The city of Brooklyn*, 9 *Barb.* 535; *Betts* agt. *The city of Williamsburgh*, 15 *Id.* 255; *Le Roy* agt. *The Mayor*, &c. *of New York*, 20 *John.* 430; *Starr* agt. *The Trustees*, &c. *of Rochester*, 6 *Wend.* 565; *Wilson* agt. *The Mayor*, &c. *of New York*, 1 *Abbott*, 15.)

All the cases affirm the power of the court to review such proceedings by *certiorari*, though in some cases denying the writ on the ground of expediency; but it will be seen that this case differs from all those in which the writ has been refused or quashed. Those cases proceed upon the ground that complete relief may be had by action to recover the amount exacted; that the relator has been guilty of delay; that an action would confine the relief to the individual case of the relator, while the allowance of the writ would upset the whole assessment; that the proceeding can only remove the record, and therefore confines the attention of the court to matters spread upon its face; that in the special case before the court, there was doubt whether the act sought to be reviewed was judicial or ministerial. The answer in this case to such objections is complete:

1. To drive the parties to action at law would be oppressive, entailing great expense, and making heavy costs against the city. They are numerous; this is one proceeding presenting conveniently what else would only be determined by many costly actions. The relief on this proceeding is summary—by action only after protracted delay. The court has full equitable jurisdiction, and the prevention of a multiplicity of suits is always a ground of equitable interference.

2. There has been no delay. The parties proceed as soon as they are informed of the assessment, at a less interval from the information than in the Third avenue case.

3. The parties complaining, represent a large proportion of the assessments; which, being fraudulent and void, should be set aside as to all affected by it.

4. The matters complained of, are patent on the face of the record; require no explanation or evidence, and by all the authorities, the confirmation of the assessment, is a judicial act.

5. Vacating the confirmation, permits a new assessment for any amount, which might prove chargeable against the property.

6. The court should facilitate proceedings of this kind calculated in a ready, simple way, without delay or expense, to upset such glaring frauds, now so prevalent: to drive parties to troublesome and expensive actions, would be so to embarrass relief from such frauds, as to make parties prefer to remain quiet under the infliction of them, and thus indirectly to encourage them. The amounts, in many cases being small, would not warrant the expense of separate actions.

*Sixth.* An assessment proceeding is on the part of the corporation, the board of assessors being one of its bureau. The writ is, therefore, properly directed to the mayor, &c. And the record consists, not merely of what the assessors may see fit to incorporate in the roll, but of all the proceedings essential to show a valid assessment; the ordinance estimate, proposals, bids, award, confirmation, contract, certificate of work done, action of the assessors, &c., &c., and all action of the common council in respect to the proceeding. The record thus made up, in this case, proves the illegality of the assessment.

1. By reason of Slattery not having been the lowest bidder.

2. By reason of his fraudulent complicity with the street commissioner. The circumstances are inconsistent with honest intent, and lead irresistibly to the inference of fraud. If, as was objected, Mr. Ewen's communications, and the report embracing them, are no part of the record, they merely state the inference of fraud, which the court itself will make.

VOL. XXXI. 8

*Seventh.* The motion to set aside should be granted.

JOHN E. DEVELIN, *counsel to the corporation.*

*By the court,* BARNARD J. Assuming that the case pre-
sented by the petitioner is one, which if true entitles the
petitioner to the relief afforded by the act of 1858, it is not
sustained by the evidence. The charge is that the contract
was obtained by Slattery by a fraudulent conspiracy and
collusion with the then street commissioner. That by
agreement with Slattery the street commissioner estimated
the earth excavation at a much less amount and the rock
excavation at a much greater amount than it really was, so
that Slattery by bidding a large price for earth excavation
and nothing for rock would seem to be the lowest bidder,
while in fact he would be the highest bidder on the contract.
The proof shows that the street commissioner took the
initiatory steps according to law.

The notice was duly published and estimated the probable
amounts of rock and earth excavation, and invited bids for
each kind of excavation and requiring that an affidavit from
persons bidding should accompany these bids, that the bid
was made without collusion or fraud, and that no member
of the city government was directly or indirectly interested
therein. Slattery's bid on this bidding was the lowest bid
according to the estimates of the street commissioner, and
the contract was duly and legally awarded to him. There is
no proof whatever showing any concert between the street
commisioner and Slattery. The result shows more earth
and less rock than the estimates. Slattery was the con-
tractor of Seventy-ninth street, which had been just com-
pleted, and that work established that the earth largely
exceeded the rock excavation upon Seventy-fifth street, and
from this evidence alone the petitioner proves the fraud.
It is insufficient to prove fraud. The question is not
whether we are inclined to believe or suspect, or whether it
is probable a fraud has been committed or may have been
committed, but *are these parties provably guilty by the evi-*

*dence?* Eightieth street showed nearly twice the amount of rock which Seventy-ninth street did. Doubtless no contractor bid without examination of the proposed work, and they could judge of the probable correctness of the estimates. Slattery may have been guided in his bid by the results of Seventy-ninth street.

The street commissioner is not shown to have had any concert with Slattery or any other contractor, nor is the contract shown to have been procured by fraud. If there were facts, which it is easy to believe there were, showing a guilty combination between the contractor and the street commissioner, the act of 1861 legalizes the assessment. The work cost the city the amount of money for which the assessment is made. The contract with Slattery is confirmed. An assessment is authorized and the city is required to pay Slattery the money due " upon said contract."

The power of the legislature to pass this act is undoubted (*Brewster* agt. *The City of Syracuse*, 19 *N. Y.* 116).

The act embraces but one subject.

Order affirmed with costs.

INGRAHAM, P. J. I concur in this decision, on the ground that the legislature have passed a law making the assessment valid and directing an assessment to be levied, not because I consider such a law proper, but because the late decisions of the court of appeals in regard to the power of the legislature seem intended to carry that power much further than has heretofore been supposed to be the law in regard to municipal corporations.